UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| C.D., by and through her PARENTS AND NEXT FRIENDS, M.D. and P.D.  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>NATICK PUBLIC SCHOOL DISTRICT  )<br>and  )<br>BUREAU OF SPECIAL EDUCATION  )<br>APPEALS,  )<br>)<br>Defendants.  ) | Civil Action No. 15-cv-13617-FDS |

**PLAINTIFFS' MEMORANDUM OF LAW
REGARDING SUPPLEMENTAL AUTHORITY IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (RENEWED MAY 15, 2017)**

**I. INTRODUCTION**

The Plaintiffs, C.D. and her parents, M.D. and P.D. ("Parents"), on behalf of their daughter and themselves, hereby submit this memorandum of law regarding supplemental authority in further support of Plaintiffs' Motion for Summary Judgment, renewed on May 15, 2017. [1]

**II. ARGUMENT**

**A. In establishing the standard for evaluating the adequacy of an education provided under the IDEA, the United States Supreme Court in *Endrew F.* looked to the general approach taken by the Court in *Rowley* for guidance, rather than on the language in *Rowley* requiring "some" level of educational benefit.**

The Court in *Endrew F. v. Douglas Cty Sch. Dist,* 580 U.S. ___, 11 (2017), clarifies that while the Court in *Board of Educ. v. Rowley*, 458 U.S. 176 (1982), "declined to articulate an overarching standard, the decision and the statutory language point to a general approach: To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to

---
[1] ECF No. 63.

1

enable a child to make progress appropriate in light of the child's circumstances." The Court found "little significance in the Court's language concerning the requirement that States provide instruction calculated to "confer some educational benefit." *Id.* at 10, noting that the "Court had no need to say anything more particular, since the case before it involved a child whose progress plainly demonstrated that her IEP was designed to deliver more than adequate educational benefits." *Id.*

1. **In looking to the general approach taken by the Court in *Rowley*, *Endrew F.* implicitly rejects all Circuit Court standards that focus on meeting the *level of benefit* required, rather than focusing on the *level of instruction* required to provide the child with appropriately challenging objectives, in light of their unique needs and individual potential for growth.**

Using *Rowley's* general approach as guidance, the Court in *Endrew F.* establishes a results-oriented standard aimed at progress in the general education curriculum for <u>all</u> children, such that the IEP provides for steady advancement, which, if not on grade level, must be appropriately ambitious in light of the child's potential for growth. The Court emphasized that, "[t]he goals may differ, but every child should have the chance to meet challenging objectives." *Id.* at 14.

In recognizing that setting the bar high leads to success, the Court noted that offering an educational program "providing 'merely more than *de minimis*' <u>progress</u> from year to year can hardly be said to have been offered an education at all,*" id.* [emphasis added], thereby implicitly rejecting all standards that focus on the *level of benefit* required, (regardless of whether that level is "merely more than *de minimis*," or "meaningful"), to the extent that those standards fail to ensure that an IEP provides every child with a level of education appropriately ambitious to enable the child to progress in the general education curriculum.

2. **The IEPs developed by Natick for the 2012-2013, 2013-2014 and 2014-2015 school years failed to provide C.D. with challenging goals and a level of instruction**

**appropriately ambitious to enable her to progress in the general education curriculum in accordance with her potential for growth, thereby failing to meet the substantive standard for a free appropriate public education under *Endrew F*.**

When C.D. returned to Natick in 2012, the Parents indicated that their goal for C.D. was a continuation of the inclusion program she had completed at the Christa McAuliffe Regional Charter School ("McAuliffe"), and from which she obtained both academic and social benefits, [2] succeeding, not only because of her unique strengths, including her excellent executive functioning and organizational skills together with her motivation to succeed, but also, (in line with *Endrew F*.), because "at McAuliffe, C.D. was in an environment where the bar was set high..and she was growing because of [that]..." [3]

The Parents provided uncontroverted information showing that C.D. had the potential to access the general education curriculum, including that she read the same books, was working close to grade level, and had passed the ELA MCAS. [4] However, like the IEP proposed by the Douglas County School District in *Endrew F.*, the IEP proposed by Natick for the 2012-2013 school year (as well as the IEPs proposed for the 2013-2014 school year and the first IEP proposed for the 2014-2015 school year) were essentially the same as the IEP that Natick had proposed in 2009, [5] despite the undisputed information showing that C.D. clearly had the potential not only to succeed, but also to flourish, in the general education environment with appropriate supports and services, where the bar was set high and she was presented with challenging goals. [6] Natick not only denied C.D. the opportunity to continue moving forward on the same trajectory as non-disabled children, but also arguably would have *reversed* that

---

[2] Pl. Mem. at 17-20, 23, 25, 29- 31, 33- 35, 39, ECF No. 38; Pl. Rep. at 2- 8, 12-16, ECF No. 52.
[3] *See* Plaintiff's Amended Statement of Material Facts at No. 68, A.R. 1848, ECF No. 39.
[4] Pl. Mem. at 17-20, 23, 25, 29-31, 33-35, 39, ECF No. 38; Pl. Rep. at 7, ECF No. 52)
[5] While the second IEP proposed by Natick for the 2014-2015 school year finally proposed placement in some small group "Replacement" classes and general education History, the IEP continued to place C.D. in the self-contained ACCESS program for Math, which would have precluded her from preparing for and taking the MCAS and obtaining a high school diploma. (Pl. Rep. at 25, ECF No. 39).
[6] Pl Mem., at 16-25; ECF 38; Pl. Rep. at 2-8, 12-16, 23-24, ECF No. 52.

trajectory by placing her in the self-contained ACCESS program for all of her core academic classes. Further, in finding that the self-contained ACCESS program in Natick was more appropriate than the general education inclusion program at McAuliffe because it provided "[C.D.] the opportunity to independently access academic services…," [7] the hearing officer in effect reasoned, (in direct contradiction to *Endrew F.*), that a program that sets the bar low (where CD would not require supports and services) was more appropriate for C.D. than one that sets the bar high and is "reasonably calculated to remediate and, if appropriate, accommodate [her] disabilities so that [she] can 'make appropriate progress in the general education curriculum,' commensurate with her non-disabled peers taking into account [her] potential for growth. [8]

- B. **Endrew F. emphasizes the crucial importance of parental participation in the IEP process by indicating that the nature of the IEP process ensures that parents and school representatives will fully air their respective opinions on the degree of progress a child's IEP should pursue, and clarifies that while Courts should not substitute their own notions of sound education policy, deference requires school officials to provide parents with cogent and responsive explanations of their decisions.**

*Endrew F.* recognizes that the "reasonably calculated" qualification "reflects a recognition that crafting an appropriate program of education requires prospective judgment by school officials." *Endrew F.,* at 11, quoting *Rowley* at 207. But the IDEA contemplates that the "fact-intensive exercise [of developing an appropriate IEP] will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians." *Id.* quoting *Rowley* at 208-209. Thus, when a school district withholds pertinent information, parents cannot provide meaningful input.

- 1. **Natick deprived the Parents of meaningful participation in the IEP process by summarily dismissing input provided by the Parents, their experts, teachers who had worked with C.D. at McAuliffe, and documentation from McAuliffe evidencing not only C.D.'s current performance levels, but also her potential for growth, resulting in IEPs that failed to meet the substantive standard under *Endrew F*.**

---

[7] Pl. Mem. at 30, ECF No. 38; Pl. Rep. at 10-12
[8] *See M.C. v. Antelope Valley Union High Sch. Dist.*, No. 14-56344 (9th Cir. 2017) at 19.

Although there was no one in attendance from Natick at the IEP meeting held on July 27, 2012, who had any personal knowledge about C.D.'s performance at McAuliffe, Natick summarily dismissed the information provided by the only persons in attendance who knew her, not only regarding C.D.'s current performance levels, but also regarding her potential for growth. [9]

**2. Because Natick deprived the parents of meaningful participation in the IEP process by failing to provide cogent explanations of their decisions, those decisions are not entitled to deference by the Court.**

Natick repeatedly withheld information and refused to provide information to the Parents, substantially interfering with their access to C.D.'s proposed educational programming. [10] In addition, there was substantial evidence on the record showing that, as a result of the lack of knowledgeable staff at the team meetings, as well as inappropriate restrictions placed on their observations, the Parents were unable to get their questions answered, significantly impeding their right to participate in the team process. [11]

### III. CONCLUSION

In her Findings on Remand, the hearing officer stated that in reaching her decision, she applied the First Circuit "meaningful benefit" standard for FAPE, and that the standard enunciated in *Endrew F.* would not have impacted her decision. [12] However, there is no clear indication in her decision that she appropriately considered either the First Circuit standard or the *Endrew F.* standard in reaching her findings and conclusions, and regardless of the standard for FAPE applied by the hearing officer, the IEP's proposed by Natick, which the hearing officer found appropriate, would have led to merely more than *de minimis* progress for C.D., at best.

Wherefore, for all the foregoing reasons, Parents are entitled to judgment in their favor as a matter of law and respectfully request that this Court grant their Motion for Summary Judgment.

---

[9] *See* Pl. Mem. at 16-40, ECF No. 38; Pl. Rep. at 2-8, 12-16, ECF No. 52.
[10] *See* Pl. Mem. at 16-40, ECF No. 38.
[11] *See e.g.*, Pl. Mem. at 24, 26-27, ECF No. 38; Pl. Rep. at 17, 19-21, ECF No. 52.
[12] *See* ECF No. 62.

DATED this 15th day of May 2017         Respectfully submitted,

C.D., by and through her PARENTS
AND NEXT FRIENDS, M.D. and P.D.

By their attorney,

/s/ Laurie R. Martucci
Laurie R. Martucci, Esq.
BBO # 561946
Martucci Law Associates
20 Cabot Boulevard, Suite 300
Mansfield, MA 02048
(508) 964-6664
lrm@martucci-law-associates.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and paper copies will be sent to those indicated as non-registered participants on May 15, 2017.

/s/ Laurie R. Martucci
Laurie R. Martucci