FILED
IN CLERKS OFFICE
2018 MAR 22 AM 11: 39
U.S. DISTRICT COURT
DISTRICT OF MASS.

**COMMONWEALTH OF MASSACHUSETTS**
**DIVISION OF ADMINISTRATIVE LAW APPEALS**
**SPECIAL EDUCATION APPEALS**

**Student v. Natick Public Schools**                              **BSEA #1408860R**

**CONSIDERATION/CLARIFICATION ON PARTIAL REMAND**

I.     Introduction

The instant Clarification is issued pursuant to the District Court's remand.

By Memorandum and Order on Plaintiff's Motion for Summary Judgment, dated July 21, 2017 (hereinafter, "District Court Decision"), the District Court Denied Plaintiff's Motion for Summary Judgment and remanded, in part, my Decision of July 24, 2015 (BSEA #1408860) to the Bureau of Special Education Appeals (hereinafter, "BSEA") for further proceedings consistent with the District Court Decision. Specifically, this matter was remanded to "permit the hearing officer to consider, or at a minimum clarify, whether the 2012-13 IEP was reasonably calculated to provide a FAPE [free appropriate public education] in the 'least restrictive' environment possible" and "whether the 2013-14 IEP provided for an appropriate education in the least restrictive environment."

Because, as noted above, the Remand was ordered to "permit the hearing officer to consider, or at a minimum clarify, whether the 2012-13 IEP was reasonably calculated to provide a FAPE in the 'least restrictive' environment possible" and "whether the 2013-14 IEP provided for an appropriate education in the least restrictive environment" there was no basis for hearing additional testimony or admitting additional exhibits. Thus, the undersigned, by Order dated August 10, 2017, allowed the Parties (both of whom were represented by counsel) to submit briefs with respect to the remand order on or before September 8, 2017. On August 25, 2017, the Parties jointly requested an extension of the deadline for submitting briefs until October 20, 2017. Their request was allowed by Order dated September 14, 2017. Natick submitted its Memorandum of Law on Least Restrictive Environment on October 20, 2017. Parents submitted their Brief Pursuant to BSEA Order Regarding District Court Remand on October 23, 2017 and the record closed at that time.

II.     Least Restrictive Environment

Under state and federal special education law, a school district has an obligation to provide services in the "least restrictive environment." 20 U.S.C. § 1412(a)(5)(A); Mass. Gen. Laws c. 71B, §§ 2, 3. *See also* 20 U.S.C. §1400(d)(1)(A); 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.114(a)(2)(i); 603 C.M.R. § 28.06(2)(c). The phrase "least restrictive environment" means that, to the maximum extent appropriate, a student must be educated with other students who do

not have a disability, and that "removal . . . from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services, cannot be achieved satisfactorily." *See also Burlington v. Mass. Department of Education*, 471 US 359, 369 (1985) (federal statute "contemplates that such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children"). Where there is tension between the educational services necessary to meet the needs of a child (and to provide her with educational benefit) and the principles of least restrictive environment, "the desirability of mainstreaming must be weighed in concert with the Act's mandate for educational improvement . . . , requir[ing] a balancing of the marginal benefits to be gained or lost on both sides of the maximum benefit/least restrictive fulcrum." *Roland v. Concord School Committee*, 910 F.2d 983 (1st Cir. 1990).

When the Natick Team convened to consider Student's placement for the 2012-2013 school year, they considered three programs. The first, the general education program, with supports, was preferred by the Parents, but deemed inappropriate by Natick because, based on Student's IEP from her prior placement and her test scores, Natick did not believe that general education was appropriate for her. (Administrative Record ("A.R.") 413-414). The second option was replacement classes, designed for students who have communication disabilities, language-based learning disabilities, specific learning disabilities and reading difficulties. Such classes provide students with access to the regular curriculum, but material is presented at a slower pace. The classes follow the Massachusetts curricular standards. (Hearing testimony of Liptak, Vol 3, pg. 143.) The third option for Student was the Access Program, a substantially separate program, with opportunities for inclusion, for students with intellectual disabilities and communication difficulties. (Hearing testimony of Michelson and Franciose) Natick, during both the May 2012 Team meeting and the July 2012 Team meeting, appropriately discussed each of the options and determined which environment could appropriately meet Student's needs. Although Parents' strong preference was for general education, none of the Natick Team members believed that Student's IEP services could be provided, or that her needs adequately addressed, in the general education setting, even with supports. Although Student was described as organized, hard-working, and cooperative, she had an intellectual disability in conjunction with weaknesses in receptive and expressive language. Based upon the information available to the Team, Natick did not believe even the replacement classes designed for students with communication disabilities and taught at a slower pace would be appropriate for Student. Natick, thus, proposed placement for Student in the Access Program where she would have received a modified curriculum according to her abilities, as well as instruction in a small group. Mindful of its obligation to provide Student with her services in the least restrictive appropriate environment, Natick proposed that Student participate in general education electives. Such programing would expose Student to general education peers, while also providing her with the specialized services she required, including support for her significant language deficits, to make progress on her IEP goals. (See Decision, July 24, 2015, pgs. 3-5, 10, 11.)

Not only did Natick's proposed IEP for the 2012-2013 school year provide for appropriate services in the least restrictive environment, but, Natick offered to reconvene the Team in October 2012 to assess Student's progress and the appropriateness of the program. This would have allowed Natick, after working directly with Student for several weeks, to amend her IEP to

include additional time in less restrictive settings as appropriate. Natick could have provided Student with a continuum of less restrictive options through which she could have moved as she progressed.[1] However, after arguing that Natick's proposal was overly restrictive, Parents placed Student in an out-of-district school for special education students where she would spend all of her time in a substantially separate classroom without any exposure to general education peers.

Natick's proposed IEP for the 2012-2013 school year would have provided Student with the opportunity to independently access curriculum at her level, rather than relying on aides, as would have been required in a general education setting. One of the stated purposes of the Individuals with Disabilities Education Act ("IDEA") is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); 34 C.F.R. § 300.1(a). Natick's proposed placement would have satisfied IDEA's purpose of better preparing Student for future independence in education and employment, by instructing and encouraging her to perform more tasks independently while still in high school.

The record is clear that Natick balanced the benefits to be gained, namely Student being able to independently access curriculum at a level and pace appropriate to her profile, against being outside of the general education setting for much of her day in the more restrictive Access classes. The record supports the Team's determination that Student required specially designed instruction in small group classes outside of the general education setting with a modified curriculum to make progress during the 2012-2013 school year.

As noted in the Decision, the IEP for the 2013-2014 school year was substantially similar to that proposed by Natick for the 2012-2013 school year and continued to propose placement in Natick's Access Program.[2] For the reasons explained above (and in in the original Decision). I find that Natick's proposal for the 2013-2014 school year also would have provided Student with a free appropriate public education in the least restrictive environment.

III. Conclusion

The 2012-2013 IEP proposed by Natick was reasonably calculated to provide Student with a free appropriate public education in the least restrictive environment. The Team considered three options and reasonably determined that the Access program was the least restrictive setting that could adequately address Student's specific needs. Further, Natick could have provided a continuum of less restrictive options through which Student could have moved as deemed appropriate by the Team.

---

[1] In fact, after Student's three-year evaluation, Natick did propose changes to Student's program that provided her with a general education social studies class with paraprofessional support as well as general education health and electives with paraprofessional support. (Decision July 24, 2015, pages 7-8.) Students in the Access Program were routinely transferred to replacement classes as appropriate. (Decision July 24, 2015, page 10)

[2] The 2013-2014 IEP also proposed vocational and community services which do not impact the analysis of the least restrictive environment.

Likewise, the 2013-2014 IEP, which was substantially similar to the 2012-2013 IEP was reasonably calculated to provide free appropriate public education in the least restrictive setting for the reasons delineated with respect to the 2012-2013 IEP.

By the Hearing Officer,

*[signature]*
Catherine M. Putney-Yaceshyn
Dated:  March 20, 2018

4