# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| C.D., by and through her parents and next friends, M.D. and P.D., | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. ) 15-13617-FDS ) |
| v. | ) ) |
| NATICK PUBLIC SCHOOL DISTRICT and BUREAU OF SPECIAL EDUCATION APPEALS, | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM AND ORDER ON PLAINTIFFS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This dispute arises out of an administrative decision by the Massachusetts Bureau of Special Education ("BSEA") concerning individualized education programs ("IEPs") proposed by the Natick School District. The BSEA found that the IEPs were adequate to provide C.D., a student with learning disabilities, with a free appropriate public education ("FAPE"), as required under the Individuals with Disabilities Education Act ("IDEA"), and denied tuition reimbursement for her placement in a private school. C.D. and her parents then brought suit against the School District and the BSEA seeking to overturn the BSEA's decision.

On July 21, 2017, the Court denied plaintiffs' motion for summary judgment but remanded the case in part to the BSEA to determine whether the 2012-13 and 2013-14 school year IEPs provided a FAPE in the least restrictive environment possible. The BSEA issued its order on March 22, 2018, concluding that the IEPs were reasonably calculated to provide a

FAPE in the least restrictive environment.

Plaintiffs have since moved for supplemental summary judgment to reverse that order. For the reasons stated below, the motion will be denied.

## I.     **Background**

The factual background, statutory framework, and procedural history of this matter are set forth in the Court's earlier memorandum and order dated July 21, 2017. *See C.D. by & through M.D. v. Natick Pub. Sch. Dist.*, 2017 WL 3122654 (D. Mass. July 21, 2017). For brevity's sake, the Court will not repeat that history here. That order denied plaintiffs' motion for summary judgment and remanded the matter in part to the BSEA to determine whether the 2012-13 and 2013-14 IEPs provided a FAPE in the least restrictive environment possible.

On March 22, 2018, the hearing officer issued an order affirming her previous opinion, stating that Natick had rationally balanced the benefits of mainstreaming against the restrictions associated with the Access classes. (*See generally* Docket No. 87).[1] She concluded that the 2012-13 and 2013-14 IEPs proposed by Natick were "reasonably calculated to provide [C.D.] with a free appropriate public education in the least restrictive environment." (*Id.* at 3).

## II.    **Legal Standard**

Plaintiffs have moved for supplemental summary judgment on their challenge to the BSEA's conclusions. However, "[i]n a case like this, summary judgment is merely the device for deciding the issue, because the procedure is in substance an appeal from an administrative determination, not a summary judgment." *North Reading Sch. Comm. v. BSEA*, 480 F. Supp. 2d 479, 480 n.1 (citations and internal quotation marks omitted). The burden of proof rests on the

---

[1] The Access Program is separate from the general education classrooms within Natick High School. In the Access Program, students "receive a vocational and life centered educational approach using the [Massachusetts] Curriculum Frameworks entry point levels for High School." (A.R. 4148-4151).

2

party challenging the hearing officer's decision. *Hampton Sch. Dist. v. Dobrowolski*, 976 F.2d 48, 54 (1st Cir. 1992).

Essentially, "judicial review [of administrative decisions on claims brought under the IDEA] falls somewhere between the highly deferential clear-error standard and the non-deferential *de novo* standard." *Lessard v. Wilton-Lyndeborough Coop. Sch. Dist.*, 518 F.3d 18, 24 (1st Cir. 2008) (citing *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 989 (1st Cir. 1990)). The IDEA provides that courts reviewing agency decisions "(i) shall receive the records of the administrative proceeding; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The Supreme Court has explained that a district court's review entails both procedural and substantive aspects. *Board of Educ. v. Rowley*, 458 U.S. 176, 205 (1982) ("When the elaborate and highly specific procedural safeguards embodied in § 1415 are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid."). Thus, in reviewing the appropriateness of an IEP, a court "must ask two questions: 'First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?'" *Roland M.*, 910 F.2d at 990 (quoting *Rowley*, 458 U.S. at 206-07).

A reviewing court must ensure that the school district and state education agency adhere scrupulously to the procedural requirements of the statute and relevant regulations and rules. *See Rowley*, 458 U.S. at 206 (noting that the Act "demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all

3

of what Congress wished in the way of substantive content in an IEP."). However, in reviewing an agency's substantive decisions on FAPEs and IEPs, a reviewing court's "principal function is one of involved oversight." *Roland M.*, 910 F.2d at 989. "[C]ourts should be loathe to intrude very far into interstitial details or to become embroiled in captious disputes as to the precise efficacy of different instructional programs." *Id.* at 992; *see also Lt. T.B. ex rel. N.B. v. Warwick Sch. Comm.*, 361 F.3d 80, 83 (1st Cir. 2004) ("The *Rowley* standard recognizes that courts are ill-equipped to second-guess reasonable choices that school districts have made among appropriate instructional methods."). Nonetheless, it is the reviewing court's role to render "an independent ruling as to the IEP's adequacy based on a preponderance of all the evidence, including the hearing officer's duly weighted findings." *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1089 (1st Cir. 1993).

In short, on matters that implicate educational expertise, heightened deference is due to an agency's administrative findings. *Mr. I v. Maine Sch. Admin. Dist. No. 55*, 416 F. Supp. 2d 147, 156 (D. Me. 2006). However, "when the issue is more a matter of law, the educational expertise of the agency is not implicated, and less deference is required." *Id.* at 157.

As to the evidence, the administrative process is to be accorded "its due weight" such that "judicial review does not become a trial *de novo*, thereby rendering the administrative hearing nugatory." *Roland M.* at 996. The First Circuit has directed district courts reviewing appeals of administrative decisions under the IDEA to

> review[ ] the administrative record, which may be supplemented by additional evidence from the parties, and make[ ] an independent ruling based on the preponderance of the evidence. That independence is tempered by the requirement that the court give due weight to the hearing officer's findings. This intermediate level of review reflects the concern that courts not substitute their own notions of educational policy for that of the state agency, which has greater expertise in the educational arena.

4

*Lt. T.B.*, 361 F.3d at 83-84 (citations and internal quotation marks omitted).

Finally, an IEP should not be judged exclusively in hindsight. "An IEP is a snapshot, not a retrospective. In striving for 'appropriateness,' an IEP must take into account what was, and was not, objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated." *Roland M.*, 910 F.2d at 992.

### III. Analysis

Plaintiffs' challenge is to the adequacy of the 2012-13 and 2013-14 IEPs. Because the 2013-14 IEP was created pursuant to the same information that was the basis for the 2012-13 IEP, the Court will address them together.

On partial remand, this Court ordered the hearing officer to "consider, or at a minimum clarify, whether the 2012-13 [and 2013-14 IEPs were] reasonably calculated to provide a FAPE in the 'least restrictive' environment possible." *C.D.*, 2017 WL 3122654, at *19.

The IDEA's requirement that students with disabilities be educated in the "least restrictive environment" means that "[m]ainstreaming may not be ignored, even to fulfill substantive educational criteria." *Roland M.*, 910 F.2d at 992-93. Rather, the benefits to be gained from mainstreaming must be weighed against the educational improvements that could be attained in a more restrictive (that is, non-mainstream) environment. *Id.*

When a child's unique needs cannot be met through education in a regular classroom, "the presumption in favor of mainstreaming is overcome and the school need not place the child in regular education." *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1045 (5th Cir. 1989); *see also Abrahamson v. Hershman*, 701 F.2d 223, 230 (1st Cir. 1983) (finding that "[t]he placement is not to be made by mechanically choosing the least restrictive environment; rather, the decision must consider the child's own needs.").

Although the educational benefit of a FAPE need not maximize a child's potential, the state must, however, "provide the child with personalized instruction and sufficient support services to allow the child to benefit educationally." *Gonzalez v. Puerto Rico Dep't of Educ.*, 969 F. Supp. 801, 807 (D.P.R. 1997). Accordingly, although mainstreaming is required under the Act whenever possible, it is unwarranted when placement in a mainstream general education classroom would result in a child simply "monitoring" classes. *DeVries by DeBlaay v. Fairfax Cty. Sch. Bd.*, 882 F.2d 876, 879 (4th Cir. 1989) (finding mainstreaming inappropriate when disability "would make it difficult for [the child] to bridge the 'disparity in cognitive levels' between him and the other students" because "he would glean little from the lectures, and his individualized work would be at a much lower level than his classmates.").

In her clarification order, the hearing officer found that the 2012-2013 and 2013-2014 IEPs "[were] reasonably calculated to provide [plaintiff] with a free appropriate public education in the least restrictive environment." (Docket No. 87 at 3). The hearing officer went into detail explaining the three options considered by the Natick team, including the general education program, replacement classes, and the Access Program. (*Id.* at 2). The hearing officer noted that the district considered the parents' preference that C.D. take part in general education, but found the district's proposal more appropriate because of C.D.'s unique "intellectual disability in conjunction with weaknesses in receptive and expressive language." (*Id.*).

The hearing officer also took into consideration the district's proposal to allow C.D. to participate in general education electives, to "expose [C.D.] to general education peers, while also providing her with the specialized services she requires, including support for her significant language deficits, to make progress on her IEP goals." (*Id.*). The district had further offered to reconvene in October 2012 to determine if C.D.'s progress merited a move to a less restrictive

environment in replacement or general education classes. (*Id.*). The hearing officer's findings are entirely consistent with the administrative record, and reflects the discussion highlighted in the July 27, 2012 IEP meeting. (A.R. 383-433).

Accordingly, based on the preponderance of the evidence, the BSEA hearing officer appropriately found that the district balanced the benefits of mainstreaming against the restrictions associated with the Access classes, and that the 2012-2013 and 2013-2014 IEPs were reasonably calculated to provide a FAPE in the least restrictive environment possible. The Court sees no reason to overturn that judgment.

**IV.     Conclusion**

For the foregoing reasons, plaintiffs' motion for summary judgment is DENIED.

**So Ordered.**


/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: July 20, 2018                    United States District Judge